UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 24-cv-387-bhl

  v.

DAVID ALAN NOVOSELSKY and
CHARMAIN J NOVOSELSKY,

        Defendants.

## ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

      This case involves efforts by the United States Internal Revenue Service (IRS) to collect outstanding tax liabilities from Defendants David Alan and Charmain J. Novoselsky. The Novoselskys appeared to have reached agreement with the IRS to reduce these liabilities four years ago, when they and the IRS entered into settlement agreements, known as Offers in Compromise (OICs). (ECF Nos. 17-13 & 17-14.) This resolution blew up, however, when the IRS revoked its acceptance of the OICs, claiming the Novoselskys had misrepresented their assets in negotiating the settlements. (ECF No. 16 ¶¶10–15). In response, the Novoselskys sued the IRS to obtain reinstatement of the OICs, but that effort failed on jurisdictional grounds. *See Novoselsky v. United States (Novoselsky I)*, No. 23-cv-0757-bhl, 2024 WL 3756310 (E.D. Wis. Aug. 8, 2024). On March 29, 2024, the IRS brought this lawsuit, affirmatively seeking to collect the Novoselskys' unpaid tax liabilities. (ECF No. 1.) The Novoselskys responded by immediately moving for summary judgment based on the OICs. (ECF No. 7.) The government responded by filing its own summary judgment motion. (ECF No. 14.) Because neither side has established that the undisputed facts allow the Court to enter judgment as a matter of law, both motions for summary judgment will be denied.[1]

---

[1] On July 18, 2024, the Novoselskys also moved to strike the IRS's reply brief and for leave to file a surreply. (ECF Nos. 24 & 25.) Because there is nothing improper in the IRS's reply brief, these motions are also denied.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

The Novoselskys are a married couple, residing in Kenosha County, Wisconsin. (ECF No. 1 ¶¶6–7.) In 2012 and 2013, the IRS completed examinations of the Novoselskys' 2009, 2010, and 2011 federal income tax liabilities and determined they owed deficiencies. (ECF No. 17-1 at 2; ECF No. 17-2 at 2; ECF No. 17-3 at 2.)

With respect to the 2010 tax year, the Novoselskys disputed their deficiencies and associated penalties in a jointly filed petition in the United States Tax Court, filed May 1, 2013. (ECF No. 16 ¶6.) That dispute was resolved on March 5, 2014, when the Novoselskys consented to a Tax Court decision confirming a $198,988.00 deficiency. (*Id.* ¶7.) The Tax Court further determined the Novoselskys were liable for an accuracy-related penalty of $19,898.80 for the 2010 tax year under I.R.C. §6662(a). (*Id.*) The Novoselskys did not appeal this decision. (*Id.* ¶8.) With respect to the 2009 and 2011 tax years, the Novoselskys filed a second petition in the Tax Court on September 15, 2013, disputing the deficiencies and penalties associated with those years. (*Id.* ¶1.) Nearly seven years later, on May 29, 2020, the Tax Court ruled that the Novoselskys owed deficiencies of $276,398.00 and $263,049.00, respectively, for the 2009 and 2011 tax years. (*Id.* ¶¶2–3.) The Tax Court further determined that the Novoselskys were liable for accuracy-related penalties of $55,279.60 for 2009 and $52,609.80 for 2011. (*Id.*) The Novoselskys appealed this decision to the Seventh Circuit, but their appeal was dismissed for failure to prosecute. (*Id.* ¶4–5.) The Novoselskys also owe a deficiency for the 2015 tax year. On October 14, 2016, the Novoselskys filed a joint income tax return, reporting that they owed $64,625.00 for 2015. (*Id.* ¶9.) The Novoselskys failed to pay the amount they reported due, and also failed to pay associated penalties of $918.00 and $2,093.80. (*Id.* ¶¶9, 16; ECF No. 17-4 at 2.)

On November 18, 2020, the Novoselskys proposed to settle all their tax liabilities by submitting two OICs (one for each of them) to the IRS. (ECF Nos. 17-13 & 17-14.) The IRS accepted the Novoselskys' offers on February 8, 2022. (ECF No. 16 ¶10.) On May 24, 2023, the IRS notified the Novoselskys that it was revoking its acceptance of the OICs. (*Id.* ¶¶12–13.) The IRS further informed them that their tax debts were not abated and that their federal income tax

---

[2] The factual background is derived from the IRS's Statement of Proposed Undisputed Material Facts, (ECF No. 16), and supporting evidence. The Novoselskys did not submit a Statement of Proposed Undisputed Facts with their summary judgment motion as required by Civil Local Rule 56(b)(1)(C). They also failed to support their objections to the IRS's submission with citations to admissible evidence as required by Civil Local Rule 56(b)(2)(B). Where properly supported, the IRS's proposed undisputed facts are deemed uncontroverted. *See* Civ. L.R. 56(b)(4).

liabilities had been reinstated. (*Id.* ¶¶14–15.) The IRS notice indicated the amounts the Novoselskys owed and demanded payment. (*Id.*¶¶18–19.)

Rather than making payment, the Novoselskys filed a complaint in this Court, seeking to have the OICs reinstated. Complaint, *Novoselsky I*, No. 23-cv-0757-bhl, ECF No. 1. The IRS moved to dismiss that case on grounds that the court lacked jurisdiction to require reinstatement of an OIC. Motion to Dismiss, *Novoselsky I*, No. 23-cv-0757-bhl, ECF No. 9. The Court agreed and dismissed the case on August 8, 2024. *Novoselsky I*, 2024 WL 3756310, at *8.

On March 29, 2024, while *Novoselsky I* remained pending, the IRS filed this lawsuit against the Novoselskys, seeking to reduce the Novoselskys' tax liabilities to judgment. (ECF No. 1.) The Novoselskys answered on May 6, 2024, and, on the same day, filed a motion for summary judgment. (ECF Nos. 6 & 7.) The IRS responded with its own motion for summary judgment on June 18, 2024. (ECF No. 14.) Both motions are now fully briefed.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could affect the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts" and provide specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986) (citing Fed. R. Civ. P. 56(e)).  Those specific facts must be supported by admissible evidence.  *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may consider only admissible evidence in assessing a motion for summary judgment.").

If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party.  *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).  "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims."  *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

## ANALYSIS

The payment of federal income taxes is a reality for Americans.  *See United States v. Sloan*, 939 F.2d 499, 501 (7th Cir. 1991) ("All individuals, natural or unnatural, must pay federal income tax on their wages." (quoting *Lovell v. United States*, 755 F.2d 517, 519 (7th Cir. 1984)).  In connection with this reality, "Congress has given the Secretary of Treasury the power 'to determine, assess, and collect federal taxes.'"  *See Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 777 (7th Cir. 2017) (quoting *Gyorgy v. Comm'r*, 779 F.3d 446, 472 (7th Cir. 2015)).  This power is delegated to the Commissioner of Internal Revenue and to local IRS officials.  *Id.* at 777–78.  Taxpayers report their income in returns each year, and the returns are then reviewed by IRS officials.  *Id.* at 778.  If a taxpayer fails to report taxable income, a tax deficiency arises.  *Kanter v. Comm'r*, 590 F.3d 410, 418 (7th Cir. 2009).  The IRS determines the amount of the deficiency and then notifies the taxpayer of the amount owed.  *Gyorgy*, 779 F.3d at 472 (citing I.R.C. §§6213(a), 6214(a)).  The taxpayer has ninety days from the date the notice was mailed to contest the deficiency; otherwise, the deficiency is assessed by the Secretary, and must be paid upon notice and demand.  *Id.* (citing § 6213(c)).

The IRS's assessment is an official recording of the determination that a taxpayer owes a particular amount in taxes, including interest, additions to tax, and assessable penalties under the Internal Revenue Code.  *See* §§6201, 6203.  Once an assessment against a taxpayer is made, the amount owed becomes a lien in favor of the IRS upon all the taxpayer's property and rights to property.  §§6321–32; *see also United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719 (1985).  The government may then file a civil action in federal district court to foreclose on the tax lien. *See* §§7401–03.

A taxpayer may defend against a suit to collect on assessed tax liabilities with "any relevant issue relating to the unpaid tax," including "offers of collection alternatives," such as an OIC. §6330(c)(2)(A)(iii). The IRS's decision to accept or reject an OIC is strictly within its discretion. *Kindred v. Comm'r*, 454 F.3d 688, 695–96 (7th Cir. 2006) (citing §7122). While "[a]cceptance of an [OIC] will conclusively settle the liability of the taxpayer specified in the offer," Treas. Reg. §301.7122-1(e)(5), the IRS cannot accept an OIC after a tax liability has been referred to the DOJ; at that point, only the Attorney General or his delegate may do so, I.R.C. §7122(a). Once an OIC is accepted, neither the taxpayer nor the IRS can reopen the case unless (1) false information or documents were supplied in conjunction with the offer; (2) the ability to pay or the assets of the taxpayer are concealed; or (3) a mutual mistake of material fact sufficient to cause the offer agreement to be reformed or set aside is discovered. Treas. Reg. §301.7122-1(e)(5)(i)–(iii).

Both the Novoselskys and the IRS ask the Court to enter summary judgment in their favor. However, as discussed below, both motions are premature: the evidence is lacking to support an order of summary judgment for either side. Given that discovery has not begun, this is far from shocking. To grant summary judgment, the moving party must present the Court with undisputed evidence to support their contention. *See* Fed. R. Civ. P. 56; *see also Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986) ("Rule 56(c) suggests that the [summary judgment] decision should be made on affidavits and documentary evidence . . . ."). Both parties fail to satisfy this obligation. Accordingly, the Court will deny both motions.

## I. The Novoselskys Are Not Entitled to Summary Judgment.

The Novoselskys invoke the OICs and argue that these settlements preclude the government's claims. More specifically, the Novoselskys contend that the IRS improperly revoked the OICs, and, thus, their payment of the agreed-upon settlements has relieved them of any tax liabilities owed as a matter of law based on the legal doctrines of accord-and-satisfaction and estoppel. (*See* ECF No. 7.) In response, the IRS acknowledges that it accepted the OICs, but it insists both OICs were validly revoked because (1) the Novoselskys made material misrepresentations in their OIC applications, and (2) the IRS did not have the authority to accept OICs for the 2010 and 2015 tax years. (ECF No. 15 at 13.) The Novoselskys, in turn, deny making any misrepresentations on their OIC applications. (*See* ECF No. 19 at 7–9.)

The Novoselskys' summary judgment motion must be denied because this Court cannot conclude that the IRS's revocation of its acceptances of the OICs was invalid as a matter of law.

As outlined above, the IRS has the authority to revoke an OIC in certain circumstances, including when a taxpayer makes a material misrepresentation on the OIC application. The record does not permit the court to resolve this issue at this early point in the case. Indeed, neither side has offered undisputed evidentiary support for its position.

On the one hand, the IRS insists that the Novoselskys made material misrepresentations on their OIC applications. (ECF No. 15 at 13.) But it submits no evidence to support this disputed contention. Its proposed undisputed facts confirm that the IRS sent revocation letters asserting this position, (ECF No. 16 ¶¶12–13), but nowhere does the government offer evidence that would support the validity of its revocation decision. The government's unsupported assertion in the revocation letters that it is entitled to revoke its acceptance of the OICs is not evidence that doing so was legally justified or appropriate.

At the same time, and on the other hand, the Novoselskys cannot prevail on their countervailing position that they did not make material misrepresentations on their OIC applications. (*See* ECF No. 19 at 7–9.) They too provide no evidence that would require the Court to rule in their favor on this issue. While the Novoselskys also insist that their bankruptcy filings somehow insulate them from having made misrepresentations on their OIC applications, they offer nothing but general statements and do not explain how or why the bankruptcy proceedings are relevant to this case. (*See id.* at 7.) If this argument has any merit, the Novoselskys' failure to develop it renders it ineffective here. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[A] party contesting summary judgment has a responsibility . . . to 'highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute.'" (quoting *Anderson*, 477 U.S. at 922)).

In sum, the parties' premature race to summary judgment, their failure to conduct discovery, and their failure to submit evidence supporting their arguments all preclude the Court from entering summary judgment for either party on the issue of the OICs. If the Novoselskys did not misrepresent their assets and the IRS's revocation of its acceptance was unjustified, the OICs may provide a defense to the government's claims. But if discovery confirms that material misrepresentations were made, the revocation was likely appropriate. This is an issue that requires further factual development.

**II.    The IRS Has Not Presented Evidence to Support Its Summary Judgment Motion.**

The IRS insists that summary judgment should be awarded in its favor for other reasons. Relying on the Form 4340s for the Novoselskys' 2009, 2010, 2011, and 2015 tax years and on the Tax Court's decisions for the 2009, 2010, and 2011 years, the government contends the record establishes the Novoselskys' undisputed tax liabilities for each of those years. (ECF No. 15 at 4–10.) It maintains that this evidence meets its initial burden and that the Novoselskys have failed to offer any proof that the assessments are invalid. (ECF No. 15 at 9–10.) Accordingly, the government claims it is entitled to summary judgment.

In response, the Novoselskys do not dispute that the assessments made against them are valid. They nonetheless reiterate that the OICs require a ruling in their favor and contend that the IRS's revocation of its acceptance of the OICs was improper. (*See* ECF No. 19.) The IRS rejects this contention and offers three reasons it is entitled to summary judgment notwithstanding the OICs. First, the IRS argues that the Tax Court's decisions for the 2009, 2010, and 2011 tax liabilities have preclusive effect and thus bar the Novoselskys from challenging the merits and amounts of the taxes owed. (ECF No. 15 at 4.) Second, it asserts that this Court does not have jurisdiction to decide whether the OICs were validly revoked based on the Tax Anti-Injunction Act (TAIA) and Declaratory Judgment Act (DJA). (*Id.* at 13.) Third, the IRS maintains that the OICs were properly revoked. (*Id.*) None of these arguments carries the day.

**A. The Novoselskys Are Not Precluded from Challenging the IRS's Claims Related to the 2009, 2010, and 2011 Tax Years.**

The IRS argues that the Novoselskys are barred from challenging "the merits and amounts" of any taxes as determined by the Tax Court. (ECF No. 15 at 4–6.) It contends that the Tax Court's ruling has a preclusive effect on litigation, and thus, even if the OICs were not properly rescinded, the Novoselskys are bound by the Tax Court rulings. (*Id.*) The IRS uses the term "res judicata," or claim preclusion, but its arguments appear to also rest on collateral estoppel, or issue preclusion. (*See id.*) Nomenclature aside, neither doctrine supports entry of summary judgment in the IRS's favor.

Claim preclusion bars "not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995). Three elements must be met: "(1) an identity of the parties or their privies; (2) [an] identity of the cause of action; and (3) a final judgment on the

merits." *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) (alteration in original) (quoting *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008)). "Claim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 415 (2020) (quoting *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016)). Issue preclusion is a narrower preclusive doctrine; it applies when "an issue is actually and necessarily determined by a court of competent jurisdiction . . . ." *Carter v. Comm'r*, 746 F.3d 318, 321 (7th Cir. 2014) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The party against whom issue preclusion is being asserted must have had a full and fair opportunity to litigate the issue in the previous suit. *Id.*

The Tax Court resolved the Novoselskys' tax deficiencies for the 2010 tax year on March 5, 2014. (ECF No. 16 ¶7.) It determined their 2009 and 2010 tax liabilities on May 29, 2020. (*Id.* ¶¶2–3.) These determinations *predate* the OICs, which were not accepted by the IRS until February 8, 2022 and not subject to any attempt at revocation until May 24, 2023. (*Id.* ¶¶10, 13.) Accordingly, as a matter of the space-time continuum, the Novoselskys could not have litigated the validity of the OIC revocation in the Tax Court. Neither claim nor issue preclusion applies.

### B. The TAIA and DJA Do Not Prevent This Court from Hearing the Novoselskys' Defenses.

The IRS next invokes the TAIA and DJA to claim that this Court has no jurisdiction even to consider the Novoselskys' OIC defenses. (ECF No. 15 at 13.) The IRS misunderstands the jurisdictional limitations of the TAIA and DJA.

Subject to certain limited exceptions, the TAIA bars federal courts from entertaining suits challenging tax assessments and collection. In relevant part, the statute provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." I.R.C. §7421(a). The purpose of the TAIA "is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). The Act "protects the Government's ability to collect a consistent stream of revenue [] by barring litigation to enjoin or otherwise obstruct the collection of taxes." *Korte v. Sebelius*, 735 F.3d 654, 669 (7th Cir. 2013) (alteration in original) (quoting *NFIB v. Sebelius*, 567 U.S. 519, 543 (2012)); *see also Novoselsky v. United States*, No. 18-C-836,

2018 WL 6305598, at *5 (E.D. Wis. Dec. 3, 2018) (denying motion to amend complaint seeking to add claim for injunctive relief against the IRS because proposed claim was barred by TAIA). Disputes over income tax liabilities must generally be raised with the IRS through the Tax Court. *See Voelker v. Nolen*, 365 F.3d 580, 581 (7th Cir. 2004).

The DJA generally allows parties to seek a court's legal determination on issues in actual controversy, subject to certain exceptions, including a specific exception for matters concerning federal taxation. Specifically, the DJA provides:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). The DJA's tax exemption arises from "[t]he Congressional antipathy for premature interference with the assessment or collection of any federal tax." *Rappaport v. United States*, 583 F.2d 298, 302 (7th Cir. 1978) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974)).

Neither statute applies here. The TAIA and DJA bar taxpayers from affirmatively suing the United States to evade paying taxes; these enactments do not prevent taxpayers from *defending* themselves when the IRS hails the taxpayer into court. *See* I.R.C. §7421(a); *see also Enochs*, 370 U.S. at 7; *Korte*, 735 F.3d at 669. *Novoselsky I* was dismissed because the Novoselskys were the plaintiffs, and they were seeking "premature interference" with the IRS's collection of federal taxes. *Novoselsky I*, 2024 WL 3756310, at *2–6; *see also Rappaport*, 583 F.2d at 302. The IRS itself brought this lawsuit, hailing the Novoselskys into court. In this context, the Novoselskys certainly have the right to defend themselves. The IRS's contention to the contrary is without merit.

The IRS maintains that this Court cannot require it to accept an OIC. (ECF No. 15 at 13.) This is correct. But a finding for the Novoselskys in this case would do no such thing; the parties

agree that the IRS already accepted the Novoselskys' OICs. (*See* ECF No. 16 ¶10; ECF No. 20 at 1.) The issue is whether the IRS's revocation of its acceptance was appropriate. The Novoselskys correctly summarize *United States v. National Steel Corp.*, 75 F.3rd 1146 (7th Cir. 1996), in which the IRS sued a taxpayer for the return of an income-tax refund, and the taxpayer defended the suit by asserting there was an agreement between the parties as to the taxpayer's liabilities. (ECF No. 19 at 4.) The TAIA and DJA did not preclude the Seventh Circuit from hearing the defense that the agreement was valid and enforceable. *See National Steel*, 75 F.3d at 1150. Accordingly, this Court has jurisdiction to review the Novoselskys' affirmative defenses.

    **C. Whether the IRS's Revocation of the OICs Was Proper Is Disputed.**

The IRS's final summary judgment argument is based on its contention that it properly revoked its acceptance of the OICs. It contends the OICs do not provide a defense because they are unenforceable given the Novoselskys material misrepresentations on their OIC applications. (ECF No. 15 at 12–14.) As explained above, whether the revocation was appropriate is disputed and cannot be resolved at this point. While the IRS is correct that it has the authority to revoke an OIC when a taxpayer makes a material misrepresentation in his or her application, *see* Treas. Reg. §301.7122-1(e)(5)(i)–(ii), the Novoselskys dispute that they made material misrepresentations in their applications.

The IRS also argues that because the Novoselskys' tax liabilities for the 2010 and 2015 tax years had been referred to the DOJ *before* the IRS accepted the OICs, it lacked authority under I.R.C. §7122(a) to enter into OICs for those tax years in the first place. (ECF No. 15 at 13.) (*Id.*) The IRS is again correct on the law. Under Section 7122(a), once a case is referred to the DOJ, the IRS is stripped of its ability to compromise a taxpayer's liabilities. After a case is referred to the DOJ, it alone has the power "to grant both civil and criminal immunity in tax cases." *See United States v. Barrett*, 505 F.2d 1091, 1102 (7th Cir. 1974). And while the IRS's acceptance of an OIC for a referred case is erroneous, "Congress outlined the method by which settlement agreements between the IRS and taxpayers are to be consummated, and Congress's legislative authority should not be subordinated to the act of an unknowledgeable administrative official." *Kennedy*, 965 F.2d at 420. Though an improper acceptance of an OIC has negative implications for taxpayers, it is well-established that "anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467

U.S. 51, 63 n. 17 (1984) (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)); *see also Brubaker v. United States*, 342 F.2d 655, 662 (7th Cir. 1965).

But while the IRS insists that the Novoselskys' tax liabilities for the 2010 and 2015 tax years were referred to the DOJ prior to the OICs, it has presented no evidence to support that contention. Nowhere in its proposed undisputed facts does the IRS even address the referral. (*See* ECF No. 16.) The only mention of the referral is in the IRS's briefing. (ECF No. 15 at 13.) To grant summary judgment, the moving party must show the Court what evidence will convince a trier of fact to accept its version of events. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 900–01 (7th Cir. 2003). Summarily insisting that the Novoselskys' tax liabilities were referred to the DOJ without supporting evidence is insufficient. Accordingly, the IRS's motion for summary judgment must be denied.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, ECF No. 7, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's cross motion for summary judgment, ECF No. 14, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike, ECF No. 24, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for leave to file sur-reply, ECF No. 25, is **DENIED**.

Dated at Milwaukee, Wisconsin on December 20, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge