UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 24-cv-387-bhl

DAVID ALAN NOVOSELSKY and
CHARMAIN J NOVOSELSKY,

Defendants.

---

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

For over a decade, the Internal Revenue Service ("IRS") has attempted to collect outstanding tax liabilities for the 2009, 2010, 2011, and 2015 tax years from Defendants David Novoselsky, a disbarred lawyer,[1] and his wife, Charmain. Six years ago, the Novoselskys appeared to resolve those liabilities when they each applied for and obtained the IRS's acceptance of a type of tax settlement agreement called an Offer in Compromise ("OIC"). The agreed-upon resolutions did not last. On May 24, 2023, the IRS notified the Novoselskys that it was rescinding both Novoselskys' OICs based on misstatements in their applications and because it had lacked jurisdiction to enter into them. Then, on March 29, 2024, the IRS brought this lawsuit to collect the unpaid taxes. The Novoselskys immediately moved for summary judgment based on the OICs, an approach that led the government to file its own pre-discovery summary judgment motion. The Court denied both motions as premature. Now, with discovery concluded, both sides again seek summary judgment. Because the IRS has introduced evidence that supports the tax liabilities it claims are due and confirms the OICs were properly rescinded, the IRS's motion for summary judgment will be granted and the Novoselskys' motion denied.

[1] The Illinois Supreme Court disbarred David Novoselsky on September 21, 2020, finding that he had made multiple baseless and false statements in court filings, including false accusations against opposing counsel, and pursued legal arguments that lacked a reasonable basis. *See* Rhys Saunders, *Illinois Supreme Court Disbars Eight, Suspends 17 in Latest Disciplinary Filing*, ILL. ST. BAR ASS'N (Sep. 21, 2020), https://www.isba.org/barnews/2020/09/illinoissupremecourtdisbarseightsus. The Novoselskys' filings in this case show a similar lack of attention to legal authorities and a penchant for attacking their opponents.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could affect the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts" and provide specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citing Fed. R. Civ. P. 56(e)). Those specific facts must be supported by admissible evidence. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may consider only admissible evidence in assessing a motion for summary judgment.").

The rules and procedures governing summary judgment apply equally to self-represented parties like the Novoselskys. *See Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). Because self-represented parties may be unfamiliar with their obligations at summary judgment, this Court's local rules impose additional obligations when a represented party moves for summary judgment against a self-represented adversary. Under Civil Local Rule 56(a)(1), the moving party must include with its motion "a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion." Civil Local Rule

56(a)(1)(B) further requires the moving party to provide the complete text of Federal Rules of Civil Procedure 56 (c), (d), and (e), Civil Local Rules 56(a) and(b), and Civil Local Rule 7. The IRS complied here. (ECF No. 41.)[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Parties

Defendants David and Charmain Novoselsky are a married couple, residing in Kenosha County, Wisconsin. (ECF No. 1 ¶¶6–7.) Since December 28, 1999, one or both of the Novoselskys has owned their residence at 8663 Lakeshore Drive, in Pleasant Prairie, Wisconsin (the "Lakeshore Drive Property"). (ECF No. 43 ¶¶16, 24.) Plaintiff is the IRS, an administrative agency subject to the supervision of the Secretary of the Treasury. I.R.C. §7801. It is charged, in part, with collecting federal income taxes. I.R.C. §§7801–03.

### 2. The Novoselskys' Tax Liabilities for 2009-2011 and 2015

The Novoselskys failed to pay their federal income taxes for 2009, 2010, 2011 and 2015. With respect to the first three of those tax years, the Novoselskys challenged the IRS's assessments in the United States Tax Court. (ECF No. 43 ¶¶1, 6.) On March 5, 2014, they consented to a Tax Court finding that they owed a deficiency of $198,988 and a $19,898.80 accuracy penalty for the 2010 tax year. (*Id.* ¶7.) They did not appeal this determination. (*Id.* ¶8.) Nearly two years later, on January 12, 2016, the IRS referred the Novoselskys' 2010 tax liability to the U.S. Department of Justice ("DOJ") for collection. (*Id.* ¶12.) The Novoselskys' challenges to their 2009 and 2011 tax assessments remained pending in Tax Court for several years. (*See id.* ¶¶1–2.)

With respect to the 2015 tax year, the Novoselskys self-reported $64,625 in taxes owed in their tax returns but then never made payment. (*Id.* ¶¶9–11.) On June 6, 2018, the IRS referred the Novoselskys' 2015 tax liability to the DOJ for collection. (*Id.* ¶13.) To summarize, by June of 2018, the IRS had referred the Novoselskys' tax liabilities for both 2010 and 2015 to the DOJ.

On May 29, 2020, the Tax Court finally rejected the Novoselskys' challenges to their 2009 and 2011 tax assessments. (*Id.* ¶¶2–3.) For the 2009 tax year, the Tax Court determined the Novoselskys owed a deficiency of $276,398 and assessed an accuracy penalty of $55,279.60. (*Id.* ¶2.) For the 2011 tax year, it found a $263,049 deficiency and imposed an accuracy penalty of

[2] The Novoselskys have not complied with this Court's Local Rules in their Responses to the IRS's Proposed Undisputed Facts. Their responses state that they "disagree" with some of the proposed facts but the Novoselskys fail to cite evidence or otherwise support these denials. (ECF No. 52.) This is insufficient. Accordingly, those facts not properly rebutted are deemed admitted. Fed. R. Civ. P. 56(c)–(e); Civ. L.R. 56(b)(4)(E.D. Wis.).

$52,609.80. (*Id.* ¶3.) The Novoselskys appealed the Tax Court's decision, but on December 11, 2020, the Seventh Circuit dismissed the appeal for lack of prosecution. (*Id.* ¶¶4–5.)

**3. The Lakeshore Drive Property and David Novoselsky's Bankruptcy Proceeding**

On June 18, 2014, in the midst of the Novoselskys' tax disputes with the IRS, David Novoselsky filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. (ECF No. 43 ¶21.) The case was later converted to Chapter 7. *In re Novoselsky*, No. 14-29136-gmh (Bankr. E.D. Wis. July 18, 2014), ECF No. 556. Among a host of creditors filing proofs of claim against his bankruptcy estate were the IRS and the bank that held a mortgage on the Novoselskys' Lakeshore Drive Property, Old Second National Bank ("Old Second"). No. 14-29136-gmh, ECF Nos. 396-1, & 36.

David Novoselsky's bankruptcy case did not proceed expeditiously. Rather, it remained pending for the next five years.[3] During that time, the Novoselskys litigated numerous disputes concerning the Lakeshore Drive Property in both state and federal courts. On June 24, 2016, Charmain Novoselsky filed a lawsuit in Kenosha County Circuit Court against Old Second insisting the bank's mortgage was void on grounds that she had not signed it. *Novoselsky v. Old Second Bank*, Kenosha Cnty. No. 16-CV-770, https://wcca.wicourts.gov (last visited September 18, 2026); (ECF No. 43 ¶22.) David Novoselsky later intervened in that lawsuit and purported to convey his ownership interest in the Lakeshore Drive Property to his wife by quitclaim deed. (ECF No. 43 ¶¶23–24.) Old Second counterclaimed against the Novoselskys and sought to foreclose on the property. (*Id.* ¶26). David Novoselsky's law firm, Novoselsky Law Offices, P.C., also sought to intervene. *See* Aug. 9, 2017 Status Conference, Kenosha Cnty. No. 16-CV-770.

After David Novoselsky's bankruptcy case was converted to Chapter 7, Virginia George was appointed as the case trustee and, after extensive proceedings, elected to abandon the bankruptcy estate's interest in the Lakeshore Drive Property. No. 14-29136-gmh, ECF No. 926. She later reversed course, however, and, over David Novoselsky's objection, the abandonment was vacated. *Id.*, ECF No. 1150. The Chapter 7 Trustee also pursued an adversary proceeding

[3] David Novoselsky's bankruptcy proceedings were contentious. The docket for the main case includes more than 1800 entries! *See in re David A. Novoselsky*, No. 14-29136-gmh (Bankr. E.D. Wis. July 18, 2014). The case also spawned 13 adversary proceedings, including actions by the IRS and the United States Trustee to deny David Novoselsky a discharge under 11 U.S.C. §727(a)(2) & (4) for concealing assets and making false oaths in connection with his bankruptcy filings. *See, e.g.*, *id.*, ECF Nos. 86, 350, 700, 701 & 702.

seeking to void David Novoselskys' transfer of his interest in the property to Charmain. *Id.*, ECF No. 1314, Adv. No. 17-02187.

Ultimately, the Novoselskys entered into two related settlement agreements concerning the disputes over the Lakeshore Drive Property. Under the first agreement, David and Charmain Novoselsky, Novoselsky Law Offices, the Chapter 7 Trustee, Old Second, and the bank's insurer (Continental Casualty Corporation) agreed to a complicated and somewhat confusing series of agreements and releases of their claims. David Novoselsky, Charmain Novoselsky, and Novoselsky Law Offices, on the one hand, and Old Second and its insurer, on the other, agreed to mutual releases of all claims related to the validity of the mortgage, with the bank also agreeing to assign its claims related to its note and mortgage to the Novoselskys' daughter, Jennifer, and with its insurer agreeing to pay the bank $722,000. (ECF No. 46-12 ¶¶1–7.) Old Second and its insurer also agreed to mutual releases with the Chapter 7 Trustee, but with the Trustee's agreement expressly subject to Bankruptcy Court approval. The agreement expressly provides that only the Chapter 7 Trustee's obligations are subject to Bankruptcy Court approval. (*Id.* ¶7.)

The second settlement agreement was between David Novoselsky, Charmain Novoselsky, and the Chapter 7 Trustee.[4] No. 14-29136-gmh, ECF No. 1575-1. Under this agreement, the Novoselskys and the Chapter 7 Trustee committed to obtaining a "final and non-appealable" order from Bankruptcy Court approving the terms of their settlement, specifically including approval of the Chapter 7 Trustee's relinquishment of all rights in the Lakeshore Drive Property and confirming that title to the real estate was vested solely in Charmain and was not subject to further claims by the Chapter 7 Trustee or the bankruptcy estate. *Id.* ¶¶1–3. Upon approval, the Novoselskys and the Chapter 7 Trustee agreed they would mutually release one another from all claims related to the Lakeshore Drive Property. *Id.* They further agreed that David Novoselsky, Charmain Novoselsky, or both, would provide the Chapter 7 Trustee's lawyer with a $100,000 deposit, payable to the Chapter 7 Trustee once a final order approving the settlement was received. *Id.* ¶4. In addition, Charmain Novoselsky agreed to provide a $150,000 promissory note to the Chapter 7 Trustee, and David Novoselsky agreed to forgo his potential homestead exemption in the Lakeshore Drive Property. *Id.* ¶¶5–6. The Chapter 7 Trustee also expressly acknowledged

[4] Old Second is listed as an "accommodation party" to the second settlement agreement but it does not appear to have signed the final document. No. 14-29136-gmh, ECF No. 1575-1 at 7.

that Old Second had assigned its claims related to the Lakeshore Drive Property to Jennifer Novoselsky. *Id.* ¶8.

As contemplated, the Chapter 7 Trustee moved for Bankruptcy Court approval of the second settlement agreement. No. 14-29136-gmh, ECF No. 1575. The IRS, which was not a party to either settlement agreement, objected to the settlement, noting the confused nature of the transaction, the lack of consideration for Old Second's transfer of its claim and mortgage to Jennifer Novoselsky, and the lack of any benefit to the bankruptcy estate and David Novoselskys' other creditors. *Id.*, ECF No. 1589. Ultimately, however, the Bankruptcy Court declined to approve the settlement agreement. *Id.*, ECF No. 1750.

Because only the Chapter 7 Trustee's obligations in the first settlement agreement were subject to Bankruptcy Court approval, the other parties implemented the terms of that agreement while approval remained pending before the Bankruptcy Court. Accordingly, Old Second transferred both its mortgage interest in the Lakeshore Drive Property and its $1,058,010.62 claim against David Novoselsky's bankruptcy estate to Jennifer Novoselsky. (ECF No. 43 ¶¶28–31); No. 14-29136-gmh, ECF No. 1630.

David Novoselsky's bankruptcy case continued briefly, but eventually ended when he affirmatively waived his right to a discharge of his debts and the Chapter 7 Trustee informed the Bankruptcy Court that she was abandoning all remaining assets because the bankruptcy estate was administratively insolvent. No. 14-29136-gmh, ECF No. 1794. The Trustee filed her final account on March 21, 2019 and the case formally closed on April 23, 2019. *Id.*, ECF Nos. 1805, & 1807.

**4. The IRS's Acceptance of the Novoselskys' Applications for OICs Covering the 2009, 2010, 2011, and 2015 Tax Years.**

Following the termination of the bankruptcy proceedings, both David and Charmain Novoselskys' tax liabilities to the IRS remained undischarged. On November 18, 2020, they each submitted an application on IRS Form 433-A requesting an OIC related to their tax obligations for the 2009, 2010, 2011, and 2015 tax years. (ECF No. 43 ¶¶14–15.) An OIC allows a taxpayer to settle a tax debt for less than the full amount due if the taxpayer can establish that he or she is unable to pay the full tax liability or if doing so would create a financial hardship. *See Offer in Compromise*, IRS (Aug. 27, 2026), https://www.irs.gov/payments/offer-in-compromise. The IRS will generally approve an OIC if the amount the taxpayer offers represents the most the IRS can expect to collect within a reasonable period of time. *Id.*

The Novoselskys' OIC applications identified the Lakeshore Drive Property as a personal asset held by Charmain Novoselsky with a then-current market value of $700,000. (ECF No. 43 ¶¶16–17.) Both applications also identified Jennifer Novoselsky as the lender on the property and reported that they owed her $1.3 million, almost double the property's fair market value. (*Id.* ¶¶19–20.) The applications disclosed minimal other property holdings (two cars, a "Polaris Autocycle," and $12,000 in household goods). (ECF Nos. 45-9 at 3, 5 & 45-10 at 3, 5.) Neither application disclosed the complicated settlement agreements that had given rise to the transfer of the note and mortgage for the Lakeshore Drive Property to Jennifer Novoselsky. (*See* ECF Nos. 45-9 & 45-10.) Nor was there any mention that the Novoselskys had made no payments to their daughter since she was assigned Old Second's rights in the note and mortgage or that there was no payment plan in existence for them to pay their daughter anything for this apparent obligation. (*Id.*)

Based on their reported financial circumstances, the Novoselskys each offered to resolve their total tax liabilities for pennies on the dollar. David Novoselsky proposed to pay a total of $5,284.00 through an initial payment of $1,056.00, followed by two subsequent monthly payments of $846.00 and then three monthly payments of $846.00. (ECF No. 45-9 at 12.) Charmain Novoselsky offered to satisfy her tax obligations for the same $5,284.00 based on a similar payment plan. (ECF No. 45-10 at 12.)

On February 8, 2022, the IRS accepted the Novoselskys' applications and agreed to settle the Novoselskys' liabilities for tax years 2009, 2010, 2011, and 2015. (ECF No. 43 ¶37.) The IRS later confirmed that it had abated the Novoselskys' outstanding federal income tax liabilities for all four years based on the OICs. (*Id.* ¶¶37–38.)

Just over a year later, however, on May 24, 2023, the IRS notified the Novoselskys that it was rescinding both OICs. (*Id.* ¶¶41–42; ECF Nos. 45-17 & 45-18.) Citing Treasury Regulation §301.7122-1(e)(5)(i), the IRS asserted that the Novoselskys had materially misrepresented their ownership interest in the Lakeshore Drive Property, including by understating its fair market value and by overstating both their alleged loan obligation to Jennifer Novoselsky and the value of any mortgage she held on the home. (ECF Nos. 45-17 at 1 & 45-18 at 1.) The IRS alternatively asserted that it had been without jurisdiction to enter the OICs to begin with given that Novoselskys' tax liabilities for the 2010 and 2015 tax years had already been referred to the DOJ at the time the OIC applications were accepted. (ECF No. 43 ¶¶39–41; ECF Nos. 45-17 at 1 &

45-18 at 1.) Given the rescission, the IRS informed the Novoselskys that they owed tax liabilities for the 2009, 2010, and 2011 tax years in the amounts previously assessed by the Tax Court. (ECF No. 43 ¶¶45–49.) It also confirmed that they owed liabilities for the 2015 tax years equal to the amount they had self-reported, along with late payment penalties. (*Id.*)

Rather than paying, the Novoselskys filed a complaint in this Court, seeking to have the OICs reinstated. *Novoselsky v. United States (Novoselsky I)*, No. 23-cv-0757-bhl, (E.D. Wis. June 12, 2023), ECF No. 1. The Court dismissed that case on August 8, 2024, agreeing with the IRS that it lacked jurisdiction to require reinstatement of an OIC. *Novoselsky I*, No. 23-cv-0757-bhl, 2024 WL 3756310, at *8 (E.D. Wis. Aug. 8, 2024). The IRS then initiated the present action.

## ANALYSIS

The IRS's single-count complaint asks the Court to reduce to judgment the Novoselskys' tax liabilities for the 2009, 2010, 2011, and 2015 tax years. (ECF No. 1 ¶¶8–25.) Both the Novoselskys and the IRS ask the Court to enter summary judgment in their favor on this claim. (ECF Nos. 41 & 47.)

In a tax collection case, the IRS bears the initial burden of establishing a *prima facie* case for the amount it claims is due from the taxpayer. It can carry this burden by producing evidence of a final tax assessment, which serves as the official recording of the agency's determination that a taxpayer owes a particular amount in taxes, including interest and assessable penalties. *See* I.R.C. §§6201, 6203. The assessment is presumed correct and its production establishes a *prima facie* case that the taxes are due and owing. *See United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *United States v. Gorokhovsky*, 575 F. Supp. 3d 1050, 1055–56 (E.D. Wis. 2021); *United States v. Troyer*, No. 91-3560, 1992 WL 382378, at *5 (7th Cir. Dec. 16, 1992). If the IRS establishes its *prima facie* case, the burden shifts to the taxpayer to refute the validity of tax liability. *Avco Delta Corp. Canada Ltd. v. United States*, 540 F.2d 258, 262 (7th Cir. 1976); *Troyer*, 1992 WL 382378, at *6. The taxpayer can overcome the presumptive correctness of the assessment by coming forward with evidence that the assessment is unreasonable. *See Fior D'Italia*, 536 U.S. at 243. The taxpayer can also defend by raising "any relevant issue relating to the unpaid tax," including "offers of collection alternatives," such as an OIC. I.R.C. §6330(c)(2)(A)(iii).

### I. The IRS Has Carried its Burden of Establishing the Novoselskys' Tax Liabilities for the 2009, 2010, 2011, and 2015 Tax Years.

The IRS has provided evidence supporting its assessments for all four of the tax years at issue. It has submitted Form 4340 Certificate of Assessments and Payments showing the Novoselskys' tax liabilities for 2009, 2010, 2011, and 2015. (ECF No. 42 at 7; ECF Nos. 45-1–6.) These documents establish unpaid taxes for each year as follows:

- 2009 – $276,398 tax liability plus $55,279 accuracy penalty
- 2010 – $198,988 tax liability plus $19,898 accuracy penalty
- 2011 – $263,049 tax liability plus $52,609 accuracy penalty
- 2015 – $64,625 tax liability plus $918 estimated tax penalty and $2,093 failure-to-pay penalty

The record confirms that the 2009, 2010, and 2011 assessments match the Tax Court's final determinations for each of those years. (*Compare* ECF No. 46-2 & 46-4, *with* ECF Nos. 45-1 at 3, 45-2 at 2, 45-3 at 2 & 45-5 at 2 (providing deficiencies of $738,435 and penalties of $127,788.20 for 2009 to 2011).) With respect to the 2015 assessment, which was not adjudicated in the Tax Court, the record confirms that the assessment matches the amounts the Novoselskys reported were due for that tax year. (*Compare* ECF Nos. 45-4 at 2 & 45-6 at 2, *with* 46-5 ¶12 & 46-6 ¶12 (providing the same amounts owed).)

The IRS has also introduced evidence to support an award of interest as of March 31, 2026. (ECF No. 45 ¶¶15, 30.) With interest as of that date, the IRS has shown the Novoselskys owe a total of around $1.8 million. (*Id.*) These amounts are presumed correct, unless and until rebutted by the taxpayer. *See Fior D'Italia*, 536 U.S. at 242. Based on this evidence, the IRS has established a *prima facie* case of tax liability and interest for all of these tax years. *See Hefti v. I.R.S.*, 8 F.3d 1169, 1172 (7th Cir. 1993); *Gorokhovsky*, 575 F. Supp. 3d at 1056.

This does not necessarily end the matter. The IRS having made its *prime facie* case, the burden thus shifts to the Novoselskys to come forward with evidence refuting the validity or reasonableness of the IRS's assessments. *See Avco Delta Corp. Canada Ltd.*, 540 F.2d at 262; *see also Fior D'Italia*, 536 U.S. at 243. As an initial matter, the IRS insists the Novoselskys are precluded from disputing the amounts owed for tax years 2009, 2010, and 2011, given the Tax Court's final judgments on those liabilities and the Novoselskys' failure to reverse them on appeal. (ECF No. 42 at 9–10.) The Novoselskys disagree, insisting they retain the right to challenge the assessments, notwithstanding their consent to the Tax Court's finding on their 2010 liability and the dismissal of their appeal from its findings concerning 2009 and 2011. (ECF No. 50 at 8–9.)

The Court need not resolve the preclusion issue because, in any event, the Novoselskys have neither come forward with evidence to dispute the amounts due nor developed any substantive legal argument against them. (*See generally* ECF Nos. 50 & 55.) Their challenges to the amounts the IRS claims are unsupported by any legal or factual authority supporting any argument that the tax assessments, themselves, were unreasonable or incorrect.

Instead, the Novoselskys seize upon a hearing notice that they claim to have recently received from the IRS relating to the 2009 and 2011 tax years and chastise the IRS for failing to disclose the notice to the Court. (ECF No. 50 at 2–6.) Strangely, they have not provided a copy of the notice to the Court. And, despite their references to the document, they have not offered any legal citation supporting their contention that it has any relevance to the tax assessments or legal issues presented in this case. Indeed, while insisting that the Court should not adjudicate the issue until after they have a chance for a further "due process" hearing before the IRS, they concede they had "limited time available to research" the matter." (*Id* at 6.) Unsupported positions, asserted without basic research or legal authority, are not a basis to oppose the IRS's evidence and arguments. Accordingly, the Court concludes that the IRS has carried its burden and the Novoselskys have not rebutted the agency's position. The IRS is therefore entitled to summary judgment on its tax collection claim unless the Novoselskys can prevail on their OIC defense.

## II. The Record Confirms that the OICs Are Not Enforceable.

The Novoselskys' only real substantive defense to the IRS's claims is their claim that the OICs preclude the IRS from collecting their unpaid tax liabilities. (ECF Nos. 47 & 48.) They contend that the IRS accepted their applications to compromise their tax liabilities for all four years, in exchange for a series of (rather small) payments, and, having made those payments, the IRS is bound by the deal it struck. (*See* ECF No. 48 at 4–5, 8–9.) Beyond insisting that the OICs remain enforceable, however, the Novoselskys again offer little factual or legal authority for their position. They cite I.R.C. §7122(a), and its interpretation in Treasury Regulation §301.7122-1(e)(5), which authorizes the IRS to enter into an OIC, but do not explain how this regulation defeats or even relates to the IRS's rescission arguments. (*See* ECF No. 48 at 15.) The failure to support their position would be sufficient grounds to deny their motion and grant the IRS the relief it seeks. *See Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011); *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). Because the record supports the IRS's position, the Court will nevertheless address the merits of the IRS's arguments concerning the OICs.

The IRS insists that it properly revoked its acceptance of the OICs for two independent reasons. First, the IRS maintains that both OICs are invalid because the IRS lacked jurisdiction to accept them given that two of the tax years included in the Novoselskys' applications had already been referred to the DOJ for collection at the time of acceptance. (ECF No. 42 at 12–14.) Second, the IRS contends it validly rescinded the OICs after discovering that the Novoselskys procured them through material misrepresentations. (*Id.* at 14–19.) As explained below, the record supports the IRS's position on both points, and the Court finds the OICs are unenforceable as a matter of law.

**A. The IRS Lacked Jurisdiction to Accept the Novoselskys' OIC Applications for the 2010 and 2015 Tax Years.**

The IRS maintains that the OICs are unenforceable because it lacked jurisdiction to accept the Novoselskys' OIC applications. The agency points out that the Novoselskys' OIC applications included their tax liabilities for the 2010 and 2015 tax years. (ECF No. 42 at 12.) It further argues that because both years had already referred to the DOJ for collection, it lacked authority to accept the applications. (*Id.* at 12–14.) The agency cites the express limitations on the IRS's authority to compromise tax debts set forth in 26 U.S.C. §7122 and evidence confirming that the IRS had already referred the Novoselskys' tax liabilities for 2010 and 2015 to the DOJ for collection by the time its agent accepted the applications. (*Id.* at 12–13.) The IRS also cites its own manual, IRM 5.8.1.6.1(1)(f), which confirms that the agency lacks authority to accept an OIC after a referral to the DOJ regardless of whether or not the DOJ has affirmatively filed suit to collect the referred debt. (*Id.*)

Section 7122 provides the IRS with authority to compromise tax debts, subject to express limitations. More specifically, Section 7122(a) provides that the IRS "may compromise any civil or criminal case arising under the internal revenue laws *prior to reference to the Department of Justice for prosecution or defense*." 26 U.S.C. §7122 (emphasis added.) Under this limitation, once the IRS refers a tax deficiency to the Department of Justice for collection, it is "divested of its authority to compromise." *Faust v. United States*, No. 92-16833, 1994 WL 327584, at *2 (9th Cir. July 7, 1994); *see Isley v. C.I.R.*, 141 T.C. 349, 363–365 (2013).

The IRS has shown that the agent who accepted the Novoselskys' OIC applications acted in excess of the agency's authority. An IRS attorney's declaration under penalty of perjury confirms that the IRS referred the Novoselskys' 2010 tax year debts to the DOJ for collection on

January 12, 2016 and their 2015 tax year debts to the DOJ on June 6, 2018. (ECF No. 44 ¶¶1, 5–6.) The record further confirms that the Novoselskys' OIC applications were not submitted until November 18, 2020, more than 17 months *after* the IRS had referred their 2015 tax liabilities to the DOJ and nearly five years *after* the referral of their 2010 tax liabilities. (*Id.* ¶9.) It is also undisputed that the Novoselskys' proposed compromise included both of those tax years and the IRS's agent who purported to accept the applications did not do so until February 8, 2022. (*Id.* ¶¶9–11.)

The Novoselskys have not developed a coherent response to this argument. They point out that the DOJ has never prosecuted them for the referred tax years and suggest that this somehow means the IRS retained jurisdiction to accept their OIC applications. (ECF No. 50 at 7–8.) They rely on *Isley* for the proposition that the DOJ has authority over tax assessments referred to it until a prosecution or settlement with the Attorney General is complete, but that still does not help the Novoselskys. (*Id.* at 7.)

At the time their OIC applications were accepted, their tax liabilities for 2010 and 2015 had already been, and were still, referred to the DOJ. (ECF Nos. 45-17 & 45-18.) As a result, it was the DOJ, not the IRS, that had authority over the tax assessments, regardless of whether the DOJ had taken legal action to collect the debts. The Novoselskys have provided no evidence to dispute the timing or fact of the referral other than self-serving statements that lack foundation. Given the express terms of Section 7122 and the undisputed evidence of the IRS's referral of both the 2010 and 2015 tax years to the DOJ, the Court agrees that the IRS did not have authority to compromise either debt when its agent accepted the Novoselskys' OIC applications. And because the settlement offers the Novoselskys made in their applications combined the resolution of the debts for those tax years with the assessments for 2009 and 2011, the deal that was agreed was void in its entirety. (ECF No. 42 at 2–3.)

The Novoselskys also argue that the Tax Court's decision in *Isley*, which the IRS relies upon to support its motion, somehow supports their own defense. (ECF No. 50 at 6–8, 14–16.) It does not. In *Isley*, the Tax Court rejected a taxpayer's claim that the IRS was required to take his OIC application into consideration at a hearing concerning a federal tax lien related to existing deficiencies that had already been referred to the Department of Justice. 141 T.C. at 356–57. The Tax Court held that "once a case has been referred to DOJ for prosecution or defense, section 7122(a) trumps section 6330(c)." *Isley*, 141 T.C. at 363. The Tax Court also emphasized that the

taxpayer was free to ask the DOJ to accept an OIC. *Id.* at 364–65. Nothing in *Isley* supports the Novoselskys' arguments that the DOJ did not retain jurisdiction over OICs in this case.

While the Seventh Circuit has not weighed in on the precise statutory language at issue, sixty years ago, it recognized the distinct allocations of authority over tax settlements between the IRS and DOJ. In *Brubaker v. United States*, 342 F.2d 655, 662 (7th Cir. 1965), the Court of Appeals applied Section 7122(a) and confirmed that until the IRS has referred a tax matter to the DOJ, only the IRS has authority to enter into a compromise. That a taxpayer may believe that governmental officer has apparent authority to settle does not matter, because a "party entering into an arrangement with a representative of the United States has the responsibility of ascertaining whether that representative acts within the bounds of his authority." *Id.* The Court of Appeals emphasized that "this is so where the scope of this authority is explicitly defined by Congress or limited by delegated legislation, properly exercised through the rule-making power." *Id.* This ruling implicitly supports the IRS's position here.

Finally, the Novoselskys argue that the IRS's declaration proving the date of the referrals to the DOJ should be disregarded under the Best Evidence Rule. (ECF No. 50 at 16–17.) This argument misunderstands basic rules of evidence. The Best Evidence Rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provide otherwise." Fed. R. Evid. 1002. If a party is attempting to prove the contents of the records, the rule applies, and the records themselves must be produced. *See United States v. Rose*, 590 F.2d 232, 237 (7th Cir. 1978). If the proposing party is trying to prove that something happened—but not the records' contents—then the Best Evidence Rule is inapplicable. *See id.* Here, the IRS is using a declaration to prove the fact of the referrals of the Novoselskys' 2011 and 2015 tax deficiencies to the DOJ; it is not using the declaration to prove the specific contents of the documents by which the referrals were made. Accordingly, the Best Evidence Rule is inapplicable. *See Fultz v. Indiana*, No. 3:19-CV-557, 2020 WL 6747729, at *2 (N.D. Ind. Nov. 17, 2020) (rejecting Best Evidence Rule objection to use of affidavit to confirm that grievances were made rather than contents of grievances themselves.)

Accordingly, the record confirms that the IRS was without authority to accept the Novoselskys' OIC applications. The IRS therefore properly revoked its acceptance of the OICs and they do not provide a defense to the IRS's attempt to collect the Novoselskys' overdue tax debts in this lawsuit.

### B. The Record Establishes that the Novoselskys Made False Representations On Their OIC Applications.

The IRS also maintains that the OICs are unenforceable because it validly reopened and revoked its acceptance of them after discovering that the Novoselskys had misrepresented their assets and liabilities in their OIC applications. (ECF No. 42 at 14–18.) The IRS primarily complains about the information the Novoselskys provided with respect to the Lakeshore Drive Property, including its fair market value and the mortgage and corresponding payment obligations the Novoselskys had concerning their home. (*Id.*)[5]

The IRS's decision to accept or reject a taxpayer's OIC application is strictly within its discretion. *Kindred v. Comm'r of Internal Revenue*, 454 F.3d 688, 695–96 (7th Cir. 2006) (citing I.R.C. §7122). The IRS regulations further provide that the agency's "[a]cceptance of an offer in compromise will conclusively settle the liability of the taxpayer specified in the offer." 26 C.F.R. §301.7122-1(e)(5). Recognizing the common law doctrine of fraudulent inducement, the regulation further provides, however, that a taxpayer's case may be reopened where:

> **(i)** False information or documents are supplied in conjunction with the offer;
>
> **(ii)** The ability to pay or the assets of the taxpayer are concealed; or
>
> **(iii)** A mutual mistake of material fact sufficient to cause the offer agreement to be reformed or set aside is discovered.

*Id*.

The IRS maintains that the Novoselskys' OIC applications provided false information with respect to the value of and encumbrances on the Lakeshore Drive Property, misrepresenting their assets and ability to pay the tax assessments due. (ECF No. 42 at 14–18.) It further contends that these misstatements entitle the IRS to reconsider and rescind its acceptance of the OICs and reopen the Novoselskys' tax liabilities for collection. (*Id.*)

The record confirms that both of the Novoselskys' OIC applications identified the Lakeshore Drive Property as belonging to Charmain Novoselsky and having a fair market value of only $700,000. (ECF No. 45-9 at 4; ECF No. 45-10 at 4.) Bankruptcy Court records also show

---

[5] The IRS also asserts that Novoselskys misrepresented when they purchased the Lakeshore Drive Property and failed to list the Tax Court litigation over the 2010 tax year on their OIC applications. (ECF No. 42 at 18.) The Court need not address these other misstatements because the Novoselskys' disclosures concerning their real estate fully justify the IRS's revocation of its acceptance of the OICs.

that on August 15, 2014, David Novoselsky swore under penalty of perjury that this property had a fair market value of $1,000,000 and was subject to a $800,000 debt to Old Second. No. 14-29136-gmh, ECF No. 13 at 3. The IRS has also submitted evidence that the Kenosha County Assessor estimated the Lakeshore Drive Property had a fair market value of $1,014,300 in 2020. (ECF No. 46-14 at 3.)

The Novoselskys' OIC applications also identified a loan balance related to the Lakeshore Drive Property of $1,300,000 and indicated that this money was owed to Jennifer Novoselsky. (*E.g.*, ECF No. 45-9 at 4.) The IRS insists this obligation is a sham and highlights evidence that the Novoselskys' daughter paid *no consideration* to the Novoselskys' original lender, Old Second, when she assumed the bank's mortgage as part of the complicated scheme by which the Novoselskys attempted to resolve their litigation against Old Second, its insurer, and the Chapter 7 Trustee. (ECF No. 43 ¶¶30–31, 34.) The IRS points to Jennifer Novoselsky's deposition testimony in which she admitted that she did not receive any money, property, or promises from the Novoselskys or provide anything to the Bank in exchange for receiving the bank's claim and mortgage interest on the property. (ECF No. 46-11 at 17:9–18:3, 79:9–11.) The Novoselskys themselves also concede that they have not made a payment of any kind to Jennifer Novoselsky and that, in fact, there is no actual payment schedule in place for them to ever do so. (ECF No. 52 ¶¶34–35.) No one has identified a promissory note or other document establishing that the Novoselskys owe their daughter anything.

The Novoselskys' response to this evidence is, like most of their arguments, scattered, hard to follow, and devoid of legal analysis. They try to create a factual issue with respect to the value of the Lakeshore Drive Property by criticizing the county assessor's estimate as not being "based on the actual condition of the property rather than on a general estimate of other similar property" and asserting, based on a declaration from David Novoselsky, that the assessor failed to account for required structural repairs costing approximately $300,000. (ECF No. 50 at 14; ECF No. 51 ¶4.) But they do not explain why David Novoselsky would have firsthand knowledge of what the Kenosha County Assessor relied upon (or did not rely upon) in reaching the estimated fair market value for the property and appear not to have taken discovery concerning the factual basis for the county assessor's valuation. A conclusory declaration from a witness lacking foundation is not enough to put a fact at issue. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992).

The Novoselskys also provide their 2024 notice of value and an amended 2024 notice of value, provided by the Village of Pleasant Prairie, which shows a reduced assessed valuation for the Lakeshore Drive Property of only $955,400. (ECF No. 51-1.) They contend that they contacted the Kenosha County Assessor in 2024 to come assess the property, and the assessor concluded that necessary structural repairs warranted a reduction. (ECF No. 51 ¶5.) But they do not explain why a $955,400 valuation in 2024 renders the much lower $700,000 valuation they presented in their OIC application accurate. Even this assessment, which is the lowest number the Novoselskys have attempted to support with evidence, is nearly 30% above the valuation they used in their OIC application. (ECF No. 45-9 at 4.)

They also argue that David Novoselsky's bankruptcy proceeding somehow insulates him from any challenge to the machinations by which Jennifer Novoselsky assumed the role of creditor with respect to their home mortgage loan. They insist that the Bankruptcy Court approved the settlement, thereby refuting the IRS's claim of a sham transaction. (ECF No. 50 at 11–12.) But this assertion is belied by the bankruptcy court record. As the IRS points out, the operative settlement agreement between the Novoselskys, the Chapter 7 Trustee, the Bank, and its insurer was never actually presented to the Bankruptcy Court. (ECF No. 42 at 16 n.5.) And, while the Chapter 7 Trustee moved for Bankruptcy Court approval of a related settlement agreement, the Bankruptcy Court *refused* to approve it by denying the motion to compromise. No. 14-29136-gmh, ECF No. 1589 at 2; ECF No. 1750 at 2. Relatedly, the Novoselskys argue that the IRS's failure to object to the settlement in the bankruptcy court should estop it from raising the issue here. (ECF No. 50 at 12–13.) This argument fails both legally and factually. First, the law generally does not allow for estoppel against the federal government. *Martin v. Consultants & Adm'rs., Inc.*, 966 F.2d 1078, 1091 (7th Cir. 1992). Second, even if it did, the Bankruptcy Court docket confirms that the IRS did object to the settlement. No. 14-29136-gmh, ECF No. 1589. The Novoselskys have not pointed to anything in the Bankruptcy Court record remotely suggesting that the Bankruptcy Court approved any aspect of either settlement agreement. There is nothing showing the Bankruptcy Court approved the purported transfer of the Bank's mortgage interest to Jennifer Novoselsky for no consideration.

The Novoselskys also assert that the Court should disregard the Novoselskys' failure to pay Jennifer Novoselsky and her related choice not to foreclose on the property. They assert Jennifer " does not wish to evict her parents" and "does not wish to undertake the financial burden

of making the property tax payments, insurance and other financial obligations which foreclosure would create." (ECF No. 50 at 20–21.) They also fault the IRS for not affirmatively pleading that the mortgage was invalid and not joining Jennifer Novoselsky as a party. (ECF No. 55 at 3 n.1.) They offer no legal authority explaining why any of these assertions refute the IRS's position.

In the end, the IRS has presented evidence that the Novoselskys presented the IRS with an inaccurate and misleading picture of their financial situation in their OIC applications. With respect to their primary asset, the Lakeshore Drive Property, they indicated a value that was 30% lower than the valuation David Noveselsky had sworn in his bankruptcy case and 30% lower than the valuation the County Assessor had estimated at the time the Novoselskys submitted their applications. No. 14-29136-gmh, ECF No. 13 at 3; (ECF No. 43 ¶18.) Neither David nor Charmain Novoselsky disclosed these lower valuations to the IRS in connection with their requests to compromise their tax liabilities. (ECF Nos. 45-9 & 45-10.) They also indicated in their applications that they owed their daughter Jennifer Novoselsky $1.3 million related to the Lakeshore Drive Property. (*E.g.*, ECF No. 45-9 at 4.) The record confirms that Jennifer Novoselsky never attempted, or even suggested she would attempt, to collect on this obligation, for which she paid no consideration. (ECF No. 50 at 20–21; ECF No. 46-11 at 17:9–18:3, 79:9–11.) The Novoselskys have produced no payment plan or other document establishing that they are required to pay their daughter anything for a parcel of real estate she appears to have acquired as part of a murky transaction to resolve disputes begun by the Novoselskys themselves.

The Novoselskys fault the IRS for failing to investigate and uncover the false picture they painted in their OIC applications. (ECF No. 50 at 11–13.) The IRS does not appear to have done significant due diligence before accepting the Novoselskys' OIC applications. But the law does not allow the dishonest to blame their victims. The applicable regulations allow the IRS to revoke its acceptance of an OIC and reopen collections proceedings if the taxpayer supplies "false information or documents" in connection with an OIC application. 26 C.F.R. §301.7122-1(e)(5)(i). That's what the Novoselskys did. The record confirms that the Novoselskys provided false information about their property and mortgage on their OIC applications. This misconduct allows the IRS the opportunity to reopen a taxpayer's tax liabilities. *See id.*

**CONCLUSION**

The Court will grant the IRS's motion for summary judgment and deny the Novoselskys' motion for summary judgment. The IRS has presented undisputed evidence establishing the tax

liabilities owed, and the Novoselskys failed to provide competent evidence supporting any argument that the IRS's assessment is unreasonable. The Novoselskys' defense, that the IRS accepted their OIC applications, also fails, because the Novoselskys presented false information on the applications, and the IRS did not have jurisdiction to accept OIC applications for the 2010 and 2015 tax years.

Accordingly,

**IT IS HEREBY ORDERED** that the IRS's motion for summary judgment, ECF No. 41, is **GRANTED**. As of March 31, 2026, the Novoselskys owe $1,843,911.40 for the 2009, 2010, 2011, and 2015 tax years. Interest will continue to accrue from that date onward until the Novoselskys pay their outstanding taxes. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Novoselskys' motion for summary judgment, ECF No. 47, is **DENIED**.

Dated at Milwaukee, Wisconsin on September 18, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge